HEARD NOVEMBER TERM, 1877.

## JONES *vs.* PLUNCKETT.

In an action to recover land, brought against one who claimed as a purchaser under "A," who had purchased from "C," deceased: *Held*, That "A" was a competent witness to prove "C's" declarations in relation to the title.

A purchaser from a deceased person, who is offered as a witness to prove the declarations of such person, is not an incompetent witness under the proviso to § 415 of the Code of Procedure.

BEFORE REED, J., AT AIKEN, SEPTEMBER TERM, 1877.

Action by William B. Jones against Peter B. Plunckett. The case is stated in the opinion of the Court.

*Henderson,* for appellant.

*Croft, Jordan,* contra.

January 15, 1878. The opinion of the Court was delivered by

WILLARD, C. J. The action was for the recovery of land, the plaintiffs alleging legal title and seeking to recover on that alone.

The defendant interposed a claim of legal title, with possession had under it, alleging no other matter by way of defense.

A verdict and judgment were rendered for the defendant, and this appeal now presents certain exceptions, one to the admissibility of testimony and the others to the charge of the Circuit Judge, on the two-fold ground of misdirection and of refusing to charge matters requested.

The testimony submitted to the jury was almost wholly offered by the plaintiff. From this it appears that plaintiff and defendant claim under a common source of title, viz., the estate of James G. Blewer, which was sold for partition in or about April 5, 1837, P. Readheimer and Mrs. E. Blewer, the widow of J. G. Blewer, becoming the purchasers of a portion of the real estate, including the land in controversy. Readheimer and Mrs. Blewer, jointly, executed to Terry, Commissioner of the Court of Equity, an instrument purporting to be a mortgage of the premises so purchased, to secure a bond for the purchase money on such sale.

A voluntary partition of the land so purchased by Readheimer and Mrs. Blewer was made in December, 1837, and the land in controversy was assigned to Readheimer; but it does not appear that any conveyance was made by Mrs. Blewer of her undivided interest in the lands thus set apart to Readheimer.

It appears that on the 26th of September, 1842, a settlement took place at the office of the Commissioner in Equity, at which the heirs of J. G. Blewer were present.

The recitals of the evidence in the brief as to what occurred at this settlement are in the following language: "It was ascertained that Readheimer was indebted on the bond in the sum of $1,450, and that said amount was due the complainant, either as her own right, or as guardian of John P. Blewer, her son; whereupon said bond and mortgage against said land, so held by said Peter Readheimer, was then and there transferred and delivered to your oratrix to enable her to collect and receive from the said Peter Readheimer the balance due on said bond, and as furnishing evidence and security for the payment of the amount due."

To understand the force of the foregoing recital, it is necessary to know that it is derived from the recitals of the pleadings in a suit in equity, commenced many years after the events referred to in it occurred, by Mrs. Blewer, who had become the wife of James B. Coleman, and who is spoken of as the oratrix in the language above quoted from the brief. It appears that the pleadings in the case just referred to were read in evidence without objection to their competency as evidence of the facts recited therein. It is true that the brief alleges that F. G. Walker, who was then in possession of the lands in suit, and under whom defendant claims to have derived title, was not made a party to such suit, yet it is reasonable to infer that the object of this statement was to show that Walker and those holding under him were not bound by the decree in that case, and not that for that reason the recitals in the pleadings were incompetent as evidence.

It must be concluded that the recitals of the pleadings in that case were read in the present case as evidence of the facts recited without objection to their competency as evidence, and they were, therefore, competent to go to the jury.

Recurring, then, to the language above recited from the brief, it is noticeable that an indebtedness of Readheimer, in the amount of $1,450, is spoken of, while the bond was that of Readheimer and Mrs. Blewer jointly, the land having been purchased on joint account. It is probable that the parties to this settlement had in view the separation of interests that had taken place between Readheimer and Mrs. Blewer, and that for the sake of convenience they adjusted the account to conform to such separation of interests. It

is also said that that amount was due to complainant, then Mrs. Blewer, which can only be said as intending that Mrs. Blewer was entitled to receive an equivalent amount from the estate.

It appears, however, clearly that the bond and mortgage of Readheimer and Mrs. Blewer were transferred from the estate to Mrs. Blewer as her individual property with the manifest intent of enabling her to hold Readheimer on the same to the extent of the amount remaining unpaid thereon, and that Mrs. Blewer took these instruments as part of a distributive portion of the estate to be held by her either in her own right or in the right of others, as events might justify.

Prior to the settlement just referred to, which occurred in September, 1842, judgment had been recovered against Readheimer by G. J. Tony, dated April 18, 1842, and which had become a lien on the real estate of Readheimer. The position of the parties, then, at the date of the judgment was as follows: Readheimer had possession of the land in suit, holding it in part under a conveyance of an undivided interest made to himself in a deed in which he was grantee conjointly with Mrs. Blewer, and partly under an agreement with Mrs. Blewer, by which he (Readheimer) was to take the undivided interest of Mrs. Blewer in the same lands in lieu and compensation for a transfer which he was to make to her of his undivided interest in other parts of the lands conjointly purchased.

Whether this agreement was ever carried out by mutual deeds of conveyance does not appear. At the same time the Tony judgment bound whatever of legal right Readheimer had in the premises. If it was competent to infer the existence of such a deed, it is only as an inference of fact that its existence can be ascertained, and that it was the province of the jury to draw. If, therefore, it was important to know the extent of the lien of the Tony judgment as affecting the whole as an undivided part of the lands in controversy then in Readheimer's possession, such fact could only be known as the result of a verdict under proper instructions.

The case, as stated, only shows as matter of legal conclusion that Readheimer had legal title to the extent of an undivided interest in the lands in suit at the date of this judgment and for some time subsequent thereto, with a right of an undivided nature, either legal or equitable, of title to this residue.

We find next in the order of time that Readheimer conveyed the lands in suit to F. L. Walker by deed dated August 7, 1842, reserving to the grantor, his heirs and assigns, the growing timber trees on said land.

This appears to have been the position of things as it regards the possession and the legal title to the land in controversy at the date of the settlement at which the bond of Readheimer and Mrs. Blewer became the undivided proprety of Mrs. Blewer.

The right, title and interest of Readheimer in the premises in suit was sold by the Sheriff under the Tony judgment and purchased by James B. Coleman, being conveyed by Sheriff's deed dated October 13, 1843, recorded October 2, 1844.

It also appears that at that sale James B. Coleman gave notice of the existence of the mortgage and claimed to be the owner thereof. It does not appear in evidence that James B. Coleman had, prior to that sale, intermarried with Mrs. Blewer, and it is altogether unexplained under what right, or supposed right, he made claim to hold the mortgage. It appears, however, that the right to the lien was established by her as against the representatives of J. B. Coleman in the equity suit brought by her.

James B. Coleman died some time prior to June 10, 1853, but the date of that event is not definitely stated.

At the date last mentioned, Mrs. Coleman, the widow of James B., who had previously been Mrs. Blewer, filed a bill in equity to foreclose the mortgage assigned to her.

At the time this suit was commenced Walker was still in possession of the land in controversy under his purchase from Readheimer, that possession not having been disturbed by James B. Coleman during his lifetime under his claim as purchaser under the Tony judgment.

As we gather from the statements of the brief and the provisions of the decree of Chancellor Wardlaw, the theory of that suit was that the title of the lands in suit was in the heirs or distributees of James B. Coleman, and that they remained charged in their hands with the amount remaining unpaid on the mortgage assigned to Mrs. Coleman. The bill was accordingly filed against these heirs and distributees, joining the personal representative, and, by the decree of Chancellor Wardlaw, the lien was upheld for the amount still unpaid on account of the purchase under the original partition, and was made a charge primarily on the lands in suit under

the equity arising out of the voluntary partition between Read-heimer and Mrs. Coleman, then Mrs. Blewer. No order of sale was, however, made at that time nor until after the events next mentioned.

F. L. Walker conveyed the lands in suit to S. M. Prothro, by deed dated November 9, 1857, which was not recorded until December, 1869.

In 1861 Mrs. Coleman executed and delivered to Walker a deed by which, after reciting the facts of purchase by Walker from Readheimer and the payment by Walker to her of the amount due on the mortgage on account of the land thus purchased of Read-heimer by Walker, she covenants as follows: "Know all men by these presents that I, the said E. M. Coleman, for and in considera-tion of the premises, do hereby confirm the said title to the said land to the said Francis L. Walker, his heirs and assigns, forever, and I, the said E. M. Coleman, do hereby bind myself, my heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto the said Francis L. Walker, his heirs and assigns, against me and my heirs and all other persons claiming the same and any part thereof."

There is much that is unexplained in regard to the circumstances attending the execution and delivery of this instrument.

It bears date subsequent to the deed from Walker to Prothro, but whether Walker had surrendered possession to Prothro before its execution does not appear. It does not appear whether Walker's deed to Prothro contained covenants of warranty as against encum-brances, so that he would have an interest to protect himself against his own covenants by a release from Mrs. Coleman of her demands against the premises. As, however, no question is made as to the effect of this instrument growing out of the fact that Walker had already parted with the title to the land at the time it was made, it may be assumed, for the purposes of the present case, that whatever passed or was capable of passing by the instrument inured to the benefit of Prothro as the successor of Walker in respect to the lands in controversy.

Without stopping to define the precise character and operation of this instrument in other respects, it is clear that, as affecting the decree of Chancellor Wardlaw and all rights that might be derived thereunder, it was a clear bar and estoppel against the enforcement of so much of that decree as set up the lien for the moneys due as

expressed by the bond and mortgage, and in this respect it was matter of indifference whether the lien was to be considered as established by the act of the parties through the mortgage, or by the law through the provisions as to statutory liens.

It is also clear that Walker, or his assignee, Prothro, or the defendant in possession under Prothro, could have arrested by appropriate means the enforcement of that decree by a sale of the lands, although Mrs. Coleman's release or act could not affect the rights existing between the heirs and distributees of J. B. Coleman, who succeeded to any right he held at the time of his decease, under the purchase at Sheriff's sale under the Tony judgment, and the parties who held possession under conveyances from Readheimer; yet she could affect her own interest under the decree, and to that extent she did so with such effect that, had Walker or Prothro been parties to the decree as holding possession of the lands affected by it, they could, after the release by Mrs. Coleman, have arrested any proceedings to sell the premises of which they held possession, claiming title thereto, and the fact that they were not made parties places the decree in the same condition, as affecting them, as that to which it might have been reduced by them had they been parties to it.

The plaintiff has no better title than Mrs. Coleman could make under this decree, after the release of Walker, (and his assigns,) as against Walker and his assigns.

The decree under which plaintiff's title arose, and which was made by Judge Melton in April, 1870, was merely supplementary to that of Chancellor Wardlaw, and left all parties standing in the rights in which they stood under Chancellor Wardlaw's decree.

Under Judge Melton's decree the lands in controversy were sold, and purchased under the title held by plaintiff.

The foregoing statement will be sufficient for an understanding of the exceptions raised by the present appeal.

The first exception is to the admissibility of evidence, and arises out of the facts that F. B. Walker was called as a witness for the plaintiff; but in his cross-examination was questioned by the defendant as to conversations and transactions between the witness and Mrs. Coleman, who was deceased at the date of such examination.

This testimony was objected to under the provisions of Section 415 of the Code of Procedure.

Section 415 contains a proviso excluding certain persons from giving testimony, on the ground of interest, actual or possible, in certain cases where, in consequence of death, insanity or lunacy, means of contradiction had become lost.

The proviso must be regarded as qualifying the provisions contained in Section 414, which relate to all persons interested in the event of the action, as well as to the provisions contained in Section 415, which relate to parties to such actions.—*Guerry* vs. *Kinsler*, 3 S. C., 423. It excludes the testimony of certain persons in certain defined cases " in regard to any transaction or communications between such witness and a person at the time of such examination declared insane or lunatic."

The persons affected by the exclusion are as follows:

1st. Any party to the action examined in his own behalf.

2d. Persons having a legal or equitable interest which may be affected by the event of the action or proceeding.

3d. Any person who previous to such examination has had such legal or equitable interest liable to be affected by the event of the action or proceeding and the same has in any way become transferred to a party to the action.

4th. Any assignee of anything in controversy.

The ground of the exclusion is as follows: " When such examination or any judgment or determination to such action or proceeding can in any manner affect the interest of such witness or the interest previously owned or represented by him."

But it is only as against certain specified persons that the evidence is capable of being excluded, and they alone can object to its introduction, viz., the executor, administrator, heirs-at-law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or the assignee or committee of such insane person or lunatic. No other description of persons can be added to these enumerated in the statute,—not even a trustee or successor to a deceased trustee.—*Guerry* vs. *Kinsler*, 3 S. C., 423.

In the present case the plaintiff Jones stands in no other light than as purchaser under a sale for foreclosure in a suit in which Mrs. Coleman, the deceased party to whom the evidence relates, was a party demanding foreclosure.

If the plaintiff could come under any title it would be that of assignee. He cannot be regarded as an assignee in any ordinary

sense of the term; for, assuming that Mrs. Coleman had a valid lien, with power of foreclosure and sale, yet the plaintiff cannot be regarded as having succeeded. Mrs. Coleman in that right. Her rights, whatever they were, were fully and exhaustively exercised in the proceeding that led to the decree of foreclosure, and the plaintiff's title, if any he acquired, was the fruit of the right as it subsisted previously in his hands and not the same identical right subsisting in his hands as an assignee. Nor can the language of the statute be extended upon the principle of analogy to cases not within the classes described as embraced within the spirit and intention of the statute, although not included in its terms, as was held in *Guerry* vs. *Kinsler*, already cited.

It follows that there was no error in admitting the testimony, and that exception must be overruled. The Circuit Judge charged that the defendant was entitled to a verdict, placing the right of the defendant to a verdict on the ground that title to the land had matured in Walker by adverse possession at the time of the filing of the bill in *Coleman* vs. *Coleman*, and that he ought to have been made a party.

This was clearly erroneous. Although it is possible that the defendant may have been entitled to a verdict as matter of law by reason of the defect in the plaintiff's title, appearing by his own showing in consequence of the release from Mrs. Coleman to Walker, yet as this appeal brings up nothing but certain exceptions, none of which embrace the question whether the defendant was entitled to a verdict on any other ground than that stated in the charge, namely, adverse possession in Walker, we cannot regard the statement of the evidence in the brief as sufficient for the discussion of questions other than those involved in the exceptions as taken.

This conclusion results from the fact that parties are only required to set forth so much of the evidence in the briefs as may be necessary to elucidate the legal character of the propositions ruled upon and their bearing on the verdict.

It is clear that as it regards the ground of the charge, namely, the fact of a completed adverse possession on the part of Walker, the Court improperly charged upon matter of fact, which, if important to the case, should have been passed upon by the jury, and could not be properly found in accordance with instructions by the Court.

As the case stands, we do not see that it is material to pass upon the various propositions bearing upon the question of adverse possession; for unless the case can be materially changed upon a new trial, the plaintiff must fail upon the ground of want of title, as shown by the deed from Mrs. Coleman to Walker.

The refusal of the Circuit Judge to charge the propositions contained in the request to charge, relating to Mrs. Coleman's release, does not appear to be erroneous. It is contended that that deed was void, upon the ground that it was executed pending the proceedings in *Coleman* vs. *Coleman.* We have already seen that the release to Walker was subsequent to the decree of Chancellor Wardlaw, and that it was competent for Mrs. Coleman to vary or affect her rights under that decree in any manner she might deem proper. Nor can the attempt to release the land be regarded as in any respect affected by the objection made in this case.

As it regards the further objection that this, being a deed of confirmation, was inoperative, as there was nothing in Walker to confirm, Mrs. Coleman was competent to divest herself of the right to enforce the decree, and it is clear that her release expresses an intent so to do; nor is it necessary that it should operate as a strict deed of confirmation in order to have that effect.

As already said, we must in the present aspect of the case regard the release as inuring to the benefit of the assignee of Walker, and as such it was clearly competent to divest Mrs. Coleman of all right to enforce her decree as against Walker and those claiming under him.

Neither Walker nor his assigns were parties to the subsequent decree made by Judge Melton, and are not affected by it, while on the other hand the plaintiff has no greater right than Mrs. Coleman was capable of exercising at the time of the sale and purchase, under which plaintiff claims, and this right, as we have seen, could not be asserted as against Walker and those claiming under him, in virtue of the release of Mrs. Coleman.

There must be a new trial.

*McIver*, A. J., concurred.